**STATE of Missouri, Plaintiff-Respondent,**

v.

**John Victor FRENTZEL, Defendant-Appellant.**

No. 14032.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 1, 1986.

Rehearing Denied Oct. 20, 1986.

Application to Transfer Denied Dec. 16, 1986.

Kenny C. Hulshof, Asst. Public Defender, Jackson, for defendant-appellant.

William L. Webster, Atty. Gen., Michael R. Whitworth, Asst. Atty. Gen., Jefferson City, for plaintiff-respondent.

HOGAN, Presiding Judge.

By amended information filed in the Circuit Court of Bollinger County, defendant John Victor Frentzel was charged with one count of possession of burglar's tools in violation of § 569.180.1, RSMo 1978, and two counts of unlawful use of a weapon in violation of § 571.030.1(1), RSMo Supp. 1984. On defendant's motion, a separate trial of count one—possession of burglar's tools—was ordered pursuant to Rule 24.07. A jury found the defendant guilty. After a hearing, the court found the defendant to be a "persistent offender" within the meaning of § 558.016.3, RSMo Supp.1984, and assessed his punishment at imprisonment for a term of five (5) years. Defendant appeals.

The State had evidence from one Lonnie Cook that during the evening of June 5, 1984, he and the defendant were driving around Cape Girardeau. They decided to commit a burglary. The defendant suggested a school. When they got to the school, defendant gained entry by forcing a window open with a pry bar of some sort. He then opened the front door and Cook entered the building. The two men took "some money." Later the same evening, Cook waited in the automobile while the defendant burglarized a "bottle shop." Cook and the defendant then drove "across the river" where they divided the money they had stolen from the school. It also appears that several articles were taken from the bottle shop. The defendant took Cook home between 3:30 and 4:00 a.m. on June 5.

The following day, Cook and the defendant drove about Cape Girardeau, drinking beer. They were talking about "breaking in something." Defendant drove by his residence to obtain two screwdrivers and a ball-peen hammer. The two men intended to break in some structure, but were deterred for one or another reason, so they drove to Oran, a small city in Scott County. While the defendant waited in the automobile, Cook, unsuccessfully attempted to force entry into a grocery store by breaking glass in an entry door, but "[c]ouldn't get through the glass."

The two men were more successful at a recreational building described in the record as the "J.C. hall." The defendant used a tire tool to "[pull a] piece of plywood off" a rear window, forced the window with the pry bar and thus gained entry. Cook and the defendant helped themselves to some beer, several large bottles of various alcoholic beverages, and money from the cash register and a video machine. They then returned to Cape Girardeau. Cook was taken home.

Douglas Williams, a Cape Girardeau police officer, was on patrol in the northwest section of the city during the night of June 6, and received two "suspicious vehicle" calls concerning the vehicle defendant was driving. Officer Williams stopped the vehicle and found that it was occupied by defendant and witness Cook. Officer Williams asked the two men several questions; Cook volunteered the statement that he and the defendant "were going to the Elk's Lodge to drink a few beers." The officer

looked in the automobile but did not search it. He saw nothing in the back seat.

About 2:30 in the morning, Williams overheard a registration check "commonly known as a 1028" being conducted by other officers of the Cape Girardeau police force on behalf of peace officers in Oran. About 4 a.m. he saw the defendant's automobile which, based on knowledge Williams had acquired, answered the description of the vehicle being sought. Defendant drove into a private driveway and stopped. Officer Williams approached the defendant's automobile and found the defendant lying in the front seat. Defendant advised the officer that he had entered the private drive to avoid a charge of driving while intoxicated.

Williams ordered the defendant out of the car and placed him under arrest. Officer Williams then found several large bottles of alcoholic beverage in the rear seat and on the rear floorboard, he found a tire iron, a hammer, a flashlight and two screwdrivers. Defendant was taken in custody and this prosecution followed.

Defendant has presented four assignments of error. The first of these points is that the trial court erred in finding beyond a reasonable doubt that the defendant was a "persistent offender." Defendant argues that: (1) the trial court misinterpreted the language of § 558.016.3, RSMo Supp.1984, defining a "persistent offender" as "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times"; (2) defendant's prior felony convictions did not represent "felonies committed at different times," and (3) the State did not carry its burden of proof on the issue whether defendant's prior offenses were in fact committed at "different times."

■ In Count I of the amended information, the State charged conjunctively that the defendant was a prior offender and a persistent offender. The sentence-enhancing circumstances are pleaded as recommended by MACH–CR 2.30.2 and the form of those allegations is unexceptionable. Although the trial court's finding is not as specific as it might have been, it found the defendant to be a "persistent offender." Of course, a "prior" offender is different from a "persistent offender," but inasmuch as the sentence-enhancing circumstances were disjunctively pleaded, the State was at liberty to show either that the defendant was a "persistent" or "prior" offender. See *State v. Hartman,* 364 Mo. 1109, 1116, 273 S.W.2d 198, 203 (banc 1954); *State v. Garrette,* 699 S.W.2d 468, 505 (Mo.App. 1985); *State v. Church,* 636 S.W.2d 703, 704 (Mo.App.1982).

■ More specifically, § 558.016.3, RSMo Supp.1984, defines a "persistent offender" as "one who has pleaded guilty to or has been found guilty of two or more felonies committed at different times." Subsection 5 requires that their guilty pleas be entered or findings of guilt have been made before the date of commission of the offense for which the accused is being prosecuted. The State has the burden of proving beyond a reasonable doubt that the defendant is a prior or persistent offender. Section 558.021.1(2), RSMo Supp.1984; *State v. Tate,* 657 S.W.2d 727, 728[3–5] (Mo.App.1981); *State v. Pirtle,* 652 S.W.2d 272, 274[4, 5] (Mo.App.1983).

■ During the hearing, held before the trial and out of the hearing of the jury, the trial court received in evidence and took notice of records of the Circuit Court of Cape Girardeau County which showed beyond cavil that on April 20, 1981, in Cause No. CR581–103FX, defendant pled guilty to each of 3 counts of a multi-count information. The defendant pled guilty to three felonies, one committed on February 10, 1981, the other two committed on February 11, 1981, precisely as alleged in Count I of the information. The defendant has made an elaborate argument that because two of the three felonies were committed on the same day, and were committed pursuant to a common scheme or plan, they are not "different offenses" within the meaning of § 558.016.3. The argument is of little significance. The sentence which the defendant received—five years imprisonment—

was authorized under the provisions of § 558.011.1(4), RSMo 1984, even if the defendant was only a "prior offender" and not a "persistent offender." Defendant claims no prejudice from any want of compliance with the extended term procedure statute, § 558.021, RSMo Supp.1984, and the trial court's error, if any, was not prejudicial in this case.

Defendant's second point is that the trial court erred in failing to declare a mistrial because the prosecuting attorney commented on his post-arrest silence when confronted with an incriminating fact. During his opening statement, the prosecutor told the jury:

   \*       \*       \*       \*       \*       \*

"Mr. Frentzel is put under arrest. He's asked where he got what he was doing with all the money, change, and he says he was playing video games. They asked him where he got all of the open containers of beer and vodka, and everything else back there. He said he bought it from John Scott for $23.

They asked Mr. Frentzel, 'Well, what about the tools laying here in the front seat—the screwdrivers with the head bent on them, and the tire tools? There appears to be fresh scrapes on them.' *He knew nothing about that, made no comment.*" (Emphasis added.)

   \*       \*       \*       \*       \*       \*

Counsel for the defendant objected at this point, stating "... This is a violation ... of Mr. Frentzel's Fifth Amendment Rights." Out of the hearing of the jury, counsel renewed this objection and clarified his point. The objection to the quoted statement was sustained; defendant's motion for a mistrial was denied. The court instructed the jury "to disregard the information the prosecuting attorney just stated." The specific error assigned is the trial court's refusal to declare a mistrial.

■ It is clear that the silence of an accused while he is under arrest is not admissible against him because he is under no duty to speak. It is also settled that an accused's failure to volunteer an exculpato-

ry statement or deny or explain an incriminating fact—while he is under arrest—is inadmissible. *State v. Stuart,* 456 S.W.2d 19, 22[3, 4] (Mo. banc 1970); *State v. Nolan,* 595 S.W.2d 54, 56[1–6] (Mo.App.1980); *State v. Pogue,* 563 S.W.2d 544, 546 (Mo. App.1978); *State v. Benfield,* 522 S.W.2d 830, 834–35[9] (Mo.App.1975). This rule does not apply if the accused chooses to waive his Fifth Amendment privilege by making statements while he is in custody. *State v. Van Doren,* 657 S.W.2d 708, 716[14, 15] (Mo.App.1983); *State v. Gilreath,* 643 S.W.2d 274, 277[3] (Mo.App. 1982); *State v. Harper,* 637 S.W.2d 342, 345[4] (Mo.App.1982). It has been held that if an accused answers questions or makes statements after he has been taken in custody and has been advised of his *Miranda* rights, he has elected not to remain silent and has waived his right to do so. *State v. Gilreath,* 643 S.W.2d at 277[3]; *State v. Harper,* 637 S.W.2d at 345[4].

■ In this case, having been taken in custody and having been advised of his *Miranda* rights, and having acknowledged that he understood his right to remain silent, the defendant voluntarily answered several questions asked by the officers at the time he was taken in custody. By answering the officers' questions, defendant elected not to remain silent. Therefore, his silence when he was questioned about the bent screwdrivers and the tire tool found in the vehicle he was driving was, in our opinion, a fair subject of comment by the prosecutor. In any event, having admonished the jury to disregard the prosecutor's comment upon the defendant's silence, the trial court did not err in "not" declaring a mistrial.

■ The defendant further argues that the trial court erred to his prejudice in allowing the State to introduce evidence of defendant's participation in several crimes for which he was not on trial. As our statement of the facts shows, the State adduced evidence of defendant's participation in several other offenses as part of its case-in-chief. The defendant made ob-

jection to some of this evidence during the trial. It is a sufficient answer to this assignment of error to point out that the State must prove, as an element of its case that the defendant had either the intent to use the tools as burglar's tools or knowledge that some other person had the purpose of using the tools to make a forcible entry into a building or inhabitable structure or a room thereof. Section 569.180.1, RSMo 1978; *State v. Lake,* 686 S.W.2d 19, 20 (Mo.App.1984); *State v. Adkins,* 678 S.W.2d 855, 860[13] (Mo.App.1984). The requisite mens rea is not shown by the mere possession of everyday tools which are not burglar's tools except in the hands of a burglar. *People v. Spillman,* 309 N.Y. 295, 130 N.E.2d 625, 626–27 (1955). For that reason, among others, proof of other burglaries or attempted burglaries may be shown to establish the requisite intent. *State v. Wing,* 455 S.W.2d 457, 463–64 (Mo.1970), *cert. denied,* 400 U.S. 1009, 91 S.Ct. 566, 27 L.Ed.2d 621 (1971). The trial court had substantial discretion in deciding the extent to which the evidence of other crimes was prejudicial to the defendant, *State v. Engleman,* 653 S.W.2d 198, 199 (Mo.1983), and we find no abuse of that discretion here. The point is without merit.

Defendant's final assignment of error is that the trial court erred to his prejudice in refusing his tendered Instruction "A" which is MAI–CR2d 3.42. MAI–CR2d 3.42 is an instruction upon the probative force of circumstantial evidence. When the evidence is partially direct and partially circumstantial, the trial court is not required to give this instruction. *State v. Griffin,* 662 S.W.2d 854, 857[2] (Mo. banc 1983); *State v. Baldwin,* 571 S.W.2d 236, 240[6] (Mo. banc 1978). *"Direct evidence"* is evidence which, if believed, proves the existence of the fact in issue without inference or presumption. *"Circumstantial evidence"* is evidence which, without going directly to prove the existence of a fact, gives rise to a logical inference that such fact does exist. *State v. Lasley,* 583 S.W.2d 511, 516[1–5] (Mo. banc 1979). In this case, the State had some circumstantial evidence, but the testimony of Lonnie Cook provided direct evidence of every element of the crime charged. It was unnecessary for the trial court to instruct the jury on circumstantial evidence.

There is no error in any respect assigned and submitted here, and accordingly, the judgment of conviction and the sentence imposed are affirmed.

PREWITT, C.J., and MAUS and CROW, JJ., concur.