STATE of Missouri, Respondent,

v.

Lillian E. SMART, Appellant.

No. WD 39948.

Missouri Court of Appeals,
Western District.

July 19, 1988.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 30, 1988.
Application to Transfer Denied
Oct. 18, 1988.

David S. Durbin, Asst. Public Defender, Kansas City, for appellant.

Philip M. Koppe, Asst. Atty. Gen., Kansas City, for respondent.

Before NUGENT, P.J., and CLARK and KENNEDY, JJ.

CLARK, Judge.

Lillian E. Smart was convicted by a jury of two counts of stealing property valued at more than $150.00. She was sentenced to consecutive terms of three years and two years. On this appeal, she contends in two allegations of error that the trial court erred in overruling her objection and in denying a mistrial when testimony was presented commenting on her post-arrest silence during interrogation.

The facts bear only generally on the points raised and were essentially undisputed. On August 28, 1986, Smart entered the Helzberg's jewelry store at the Ward Parkway Shopping Center. She asked to see a $9,000.00 diamond ring displayed in a showcase. The clerk gave the ring to Smart who expressed admiration for the ring and held it up at eye level. A young, tall black man had been lingering near a display at the front of the store and as Smart held the ring up between her thumb and forefinger, the black man ran up to Smart, grabbed the ring and fled from the store and from the shopping center. He was never caught and the ring was not recovered. A short time before this incident, a security guard in another store had observed Smart in the company of a young black man of the same general physical characteristics as the Helzberg's thief.

On September 3, 1986, Smart visited another Helzberg's store, this one at the Bannister Mall Shopping Center. The performance at the Ward Parkway store was repeated. Smart asked to look at a diamond ring, this one priced at $16,000.00. As she held the ring up on the tip of her finger, a tall black man with close-cropped hair sprang forward, grabbed the ring and fled from the store. He was not apprehended.

In both of the incidents, Smart remained in the store after the theft, stated she had an insufficient opportunity to view the thief so as to make an identification and denied complicity in the crime. She was not placed under arrest until the second crime occurred and then, only after she had given a false name and identification to the police and after the manager at the Ward Parkway store provided the information which placed Smart in both stores when the robberies were committed.

The points at issue on the appeal concern the testimony of William A. Cosgrove, Jr., a police officer who interrogated Smart at the police station following her arrest. Before the questioning, Cosgrove gave Smart an explanation of her rights under *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), and she signed a form waiving her entitlement to an attorney and her right not to be interrogated. Cosgrove then began questioning Smart by asking whether she was the person in the Helzberg stores when the rings were taken. Smart agreed that she was but interjected that she had not taken the rings and didn't know why she had been arrested.

At the time, Cosgrove had an array of four photographs on the interrogation table. He asked Smart if she knew any of the persons in the photographs, but she made no reply. In the questioning of Cosgrove at trial, the details of the interrogation were described and, with respect to the four photographs, the prosecutor asked Cosgrove if the persons in the photographs had any relationship to the defendant. The officer replied:

I had them laying there as part of the investigation. She asked me, Why do you have these photographs laying on the table. And at that time I asked her,

do you know any of these people. She refused to make any comment.

■ Smart contends the testimony by Detective Cosgrove violated her Fifth Amendment right to remain silent following arrest in that it conveyed a suggestion of guilt by reason of her failure to answer the question. She says the evidence suggested to the jury either that she knew the individuals in one or more of the photographs and refused to aid the investigation or that she was guilty because one innocent of the charge would have made some reply.

In the first place, we fail to perceive how the inference which Smart places on the testimony follows from the content of the officer's statement. The photographs were not introduced in evidence, the identities of the persons depicted were not disclosed and there was no evidence indicating that any of those persons in the photographs had been linked to the Helzberg's robberies or that they had any relationship to Smart. Even were the testimony objectionable, the appellant has failed to demonstrate how its use prejudiced her case.

Moreover, the officer's statement was not the product of any calculated effort by the state to create the impression with the jury which Smart suggests. The question put to the officer, in reference to the photographs was, "and I'm not interested in who they were, but did they have any relationship at all to the defendant." This followed the officer's testimony that it was Smart who brought up the subject of the photographs by asking him why he had the pictures on the table.

If it be concluded, however, that the evidence was prejudicial to Smart, there was no Fifth Amendment violation.

■ If an accused exercises the constitutional right to remain silent and not to respond to post-arrest interrogation, the fact that the accused has made that choice is not admissible in evidence against him. *Doyle v. Ohio*, 426 U.S. 610, 619, 96 S.Ct. 2240, 2245, 49 L.Ed.2d 91 (1976). The reason for the rule is that the prohibition against self incrimination implicitly includes the guarantee that the fact of an accused's acceptance of Fifth Amendment protection will not itself be shown as an incriminating circumstance. A jury may be informed that a statement of rights has been given the accused, but it is error to comment on the fact that the accused exercised the right. *See State v. Poe*, 717 S.W.2d 855, 856 (Mo.App.1986). However, this rule has no application where the accused does not exercise his right to remain silent, but elects to make a statement. *State v. Van Doren*, 657 S.W.2d 708, 716 (Mo.App.1983).

■ In the present case, Smart waived her right not to submit to questioning and therefore her answers to questions and remarks she volunteered were appropriate facts to be presented to the jury. She appears to contend, however, that her waiver was selective and conditional and that her failure to answer any particular question should be construed as a reassertion of her *Miranda* rights. In this regard, we note that Smart did not elect to terminate the questioning and did not affirmatively assert any right at all. She merely said nothing when asked about the photographs.

The supreme court explained in *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), that *Doyle* does not apply to all circumstances where the post-arrest silence of the accused may create an adverse inference. There, the defendant gave a statement to police officers explaining his possession of a stolen automobile. At trial, he supplied other information and on cross-examination he was asked, if the information were true, why he did not disclose it when first questioned. The defendant complained that this constituted an impermissible comment on his right under *Doyle* not to have an unfavorable inference drawn from a post-arrest failure to answer questions. The court observed that each of the defendant's two inconsistent versions of the events could be construed to involve silence, as to omitted facts in each account, but this is not the silence to which *Doyle* applies. Having waived his right to remain silent after his arrest, the defendant was properly cross-

examined as to information he failed to disclose.

The present case is similar to *State v. Frentzel*, 717 S.W.2d 862 (Mo.App.1986), in which the defendant was arrested while occupying an automobile in which were found several large open containers of alcoholic beverages, a tire iron, hammer, a flashlight and two screwdrivers. The officers were investigating several burglaries. Under questioning, the defendant offered explanations for his possession of the liquor and a quantity of coins, but not the tools. At trial, the prosecutor observed that the defendant had failed to respond to a question about the suspected burglar's tools. The opinion held this to be permissible because once the accused agrees to answer questions, a fair subject for comment is the failure by the accused to answer certain inquiries.

A comparable result was reached in *State v. Trice*, 575 S.W.2d 739 (Mo.App. 1978), *cert. denied*, 442 U.S. 945, 99 S.Ct. 2891, 61 L.Ed.2d 316 (1979), a prosecution for possession of heroin. After obtaining a search warrant, officers entered defendant's apartment and found defendant in the bedroom. On a table by the bed, the officers observed a wallet, some altered currency and heroin capsules. The defendant was informed of his right to remain silent and upon being questioned, admitted that the wallet was his. He failed to give any explanation for the presence of the heroin or its ownership. The court held that once the defendant waived his right to remain silent, the state was entitled to show the replies he made and his failure to answer other questions.

■ The concurring opinion correctly observes that an accused who waives his *Miranda* rights and consents to being questioned does not irrevocably lose the right, but he may thereafter choose to terminate the interrogation. That, however, is not the issue in this case. Smart is not shown by this record to have indicated any intention to end the questioning. She simply made no answer when asked about the photographs.

It is not uncommon, as a matter of experience, that a suspect under interrogation may find some questions difficult or embarrassing to answer and may, as did Smart, make no reply. Whether silence amounts to a reassertion of the privilege against self-incrimination is a question dependent on consideration of all the circumstances present at the time. Here, it is certainly arguable that Smart did not answer the question because she was confounded by seeing a photograph of one of her accomplices in the robbery. Whether or not that be so, there is no confirmation at all that Smart sought to end the interview or that she intended by her silence to invoke that right. She simply was faced with a question she did not choose to answer.

■ The state is entitled to rely on a waiver of the privilege against self-incrimination given after full disclosure to a suspect of his rights. Although the waiver is not irrevocable, it is certainly effective until withdrawn. If the privilege is reasserted, it is not available to avoid a single offensive question, but to cease all questioning, and the suspect is under an obligation to communicate his decision in an intelligible fashion. *Miranda* does not subject the state to selective excisions from the record of an interrogation.

Smart herself injected the matter of the photographs into the discussion with the detective after she had been fully informed of her rights not to submit to questioning. She not only signed a form waiving her *Miranda* rights but proceeded to answer several questions in an exchange with the officer. The authorities cited confirm that the state was entitled to show to the jury the full results of the interrogation including the question which Smart did not answer.

The judgment is affirmed.

NUGENT, P.J., concurs in separate concurring opinion.

KENNEDY, J., concurs.

NUGENT, Presiding Judge, concurring.

I concur with the affirmance of defendant Smart's conviction for the simple reason that if Lillian Smart were tried one hundred times on this evidence, with or without Detective Cosgrove's testimony, she would in my opinion be convicted one hundred times. I am convinced that the error committed in not striking the offending testimony or in refusing to declare a mistrial is harmless beyond a reasonable doubt, *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), and that the risk of confusion is not so great as to upset the balance of advantage. *Shepard v. United States*, 290 U.S. 96, 104, 54 S.Ct. 22, 25, 78 L.Ed. 196 (1933).

Nevertheless, Detective Cosgrove's testimony was a violation of Ms. Smart's Fifth Amendment privilege against self-incrimination.

The *Miranda* warning that she was given advised Ms. Smart that she had a right to remain silent. In its concluding words that warning further advised her in the plainest of language that she could "stop talking at any time."

The transcript of Detective Cosgrove's testimony makes abundantly clear that that is exactly what Ms. Smart did—she decided to "stop talking" as she had a constitutional right to do. She chose to remain silent as she had just been advised she could do lest anything she said could and would, as the *Miranda* warning advises, be used against her, and at trial the detective volunteered that she "refused to make any comment."

The entire testimony of Detective Cosgrove took only seventy lines of the transcript at twenty-five lines to the page. His testimony about the questions he asked her reads as follows:

Q. Can you tell us what questions you asked of her and what her responses were?

A. OK. I asked her if she was, in fact, the same person who had been in both jewelry stores.

Q. By both jewelry stores, what stores are you referring to?

A. I believe it would be the Helzberg stores or Zale's. I would have to get a report to look. The one at the Bannister Mall and the one at the Ward Parkway shopping center. I can recall that.

Q. What else did you ask her?

A. I asked her if she, in fact, had been holding the rings when the rings were taken from her hand.

Q. And what did she say?

A. She responded yes to both of them; that, yes, she had been in both jewelry stores and had been holding rings when they were snatched from her hand.

Q. Did she make any statement about whether or not she took the rings out of the store?

A. Yes, she did.

Q. What did she state?

A. When she was—you know, she asked—she says, Why am I here? During this part of the conversation, Why am I here? And I said—again explained to her, you have been charged with stealing because of the thefts of these two rings. She says, You can't charge me with anything. I did not take them from the store.

Q. Did you have any photographs laying on your desk at the time?

A. Yes, I did. I had four photographs of parties lying on the interview table.

Q. And I'm not interested in who they were, but did they have any relationship at all to the defendant?

A. I had them laying there as part of the investigation. She asked me, Why do you have these photographs laying on the table? And at that time I asked her, Do you know any of these people? She refused to make any comment.

So far as the record on appeal shows, that terminated the interrogation.

Defense counsel objected at once and moved a mistrial and an admonishment, both of which the court denied. The prosecutor assured the judge that he had warned the detective not to say anything about her commenting on anything, to give only her answers.

In a factual situation quite similar to this, the Supreme Court of Missouri held that the trial court committed reversible error in overruling the defendant's motion to strike the police officer's testimony, "He refused to make a statement." *State v. Vainikos*, 366 S.W.2d 423, 427 (Mo.1963) (en banc). There, at trial defendant testified that he had placed the pistol in question on the floor of the car where it could be seen and that he carried it in the car for protection as he made his collections for his employer. On cross-examination the prosecutor asked him if he had told that to the arresting officer, and the defendant said that he had not. The prosecutor called the officer in rebuttal and the following exchange took place:

Q. Officer, after you placed Vainikos under arrest and found . . . the pistol, did you ask him why he was carrying it?

A. Yes, sir.

MR. KOSTER: I have no further questions.

MR. LEE: No questions.

MR. KOSTER: Did he give you an answer, Officer?

A. He refused to make a statement.

The court held that while under arrest the accused has no duty to make any statement and his silence is not admissible in evidence against him. *State v. Bowdry*, 346 Mo. 1090, 145 S.W.2d 127, 129–30 (1940).

The detective's testimony about defendant Smart's refusal to make any comment is a clear violation of the rule of *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). There at 384 U.S. 475–76, 86 S.Ct. 1628–29, the Court held, "Moreover, when in-custody interrogation is involved, there is no room for the contention that the privilege is waived if the individual answers some questions or gives some information on his own prior to invoking his right to remain silent when interrogated."

The Court also said:

Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease. At this point he has shown that he intends to exercise his Fifth Amendment privilege; any statement taken after the person invokes his privilege cannot be other than the product of compulsion, subtle or otherwise. Without the right to cut off questioning, the setting of in-custody interrogation operates on the individual to overcome free choice in producing a statement after the privilege has been once invoked. 384 U.S. at 473–74, 86 S.Ct. at 1627–28; *Michigan v. Mosley*, 423 U.S. 96, 100–101, 96 S.Ct. 321, 325, 46 L.Ed.2d 313 (1975).

That holding of the Court is the reason all valid *Miranda* warnings now contain the concluding bit of advice to the accused that he may decide at any time to exercise his privilege and stop answering questions. Neither the Court in *Miranda* nor the *Miranda* warning actually given require the accused to say, "Stop the questioning," or anything else to exercise his privilege. All the accused need do is remain silent.

At trial in *Doyle v. Ohio*, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), the defendants testified that they were framed. The prosecutor asked each defendant why he had not told the frameup story to the arresting agent. The cross-examining prosecutor framed his question to defendant Doyle to indicate that at the time he was arrested Doyle said to the arresting agent, "I don't know what you are talking about." Doyle's answer to the question was, "I believe what I said,—'What's this all about?' If I remember, that's the only thing I said." There the Court explicitly held at 619 that the use for impeachment purposes of the accused's silence about the frameup after arrest and after receiving the *Miranda* warnings violates the Due Process Clause of the Fourteenth Amendment.

If defendant's silence may not be used against him at trial even for impeachment of his trial explanation, a fortiori, his silence may not be used against him in the state's case in chief. This is particularly so, as the Court noted in *Anderson v. Charles*, 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980), where the question (or in this case the detective's answer) was

"designed to draw meaning from [the] silence...." *Id.* at 409, 100 S.Ct. at 2182.

Lillian Smart's question to the interrogating detective, "Why am I here?" was similar to Doyle's "What's this all about?" Both defendant Smart and the *Doyle* defendants made their comments after *Miranda* warnings. As the Court said in *Doyle v. Ohio*, "Silence in the wake of these warnings may be nothing more than the arrestee's exercise of these *Miranda* rights. Thus, every post-arrest silence is insolubly ambiguous because of what the State is required to advise the person arrested." *Doyle*, 426 U.S. at 617, 96 S.Ct. at 2244. And, the Court added, although "the *Miranda* warnings contain no express assurance that silence will carry no penalty, such assurance is implicit to any person who receives the warnings." *Id.* at 618, 96 S.Ct. at 2245.

To the extent that the cases cited by Judge Clark, *State v. Van Doren*, 657 S.W. 2d 708 (Mo.App.1983), *State v. Frentzel*, 717 S.W.2d 862 (Mo.App.1986), and *State v. Trice*, 575 S.W.2d 739 (Mo.App.1978), deviate from *Doyle v. Ohio* and *Miranda v. Arizona* and hold or imply that the prosecution may exploit or draw meaning from an accused's silence after *Miranda* warnings they are wrong and should not be followed. Cf. *United States v. Hale*, 422 U.S. 171, 95 S.Ct. 2133, 45 L.Ed.2d 99 (1975). If those cases mean, as they seem to, that an accused who answers any question after *Miranda* warnings are given while in custody thereby irrevocably waives his privilege against self-incrimination and may not reinvoke his privilege despite the concluding advice of the *Miranda* warning, they are incorrect. As *Miranda* says, the arrestee may in any manner "at any time prior to or during questioning" indicate that he wishes to remain silent and stop the interrogation. 384 U.S. at 473–74, 86 S.Ct. at 1627. A defendant may reassert his right to remain silent at any time. *Hill v. United States*, 404 A.2d 525, 531 (D.C.Cir.1979); *State v. Apostle*, 8 Conn.App. 216, 512 A.2d 947, 954 (1986).

I do not want to be understood to condone a defendant's selectively refusing to answer some questions while answering others. A defendant may waive his privilege against self-incrimination and later revoke the waiver and reinvoke his privilege, but *Miranda* and *Doyle* do not contemplate a stop and go, on again off again interrogation controlled by the accused.

If a defendant wishes to challenge the prosecutor's use at trial of his confession or admissions on a *Miranda* or *Doyle* ground, the defendant has the burden in the trial court to show that, after a waiver, he reinvoked his Fifth Amendment privilege.

In this case, however, defense counsel in a motion in limine before trial had prevailed upon the trial court to suppress any testimony referring to defendant's silence during her interrogation by Detective Cosgrove on the ground that it would reflect adversely on her post-arrest right to remain silent. The prosecutor agreed not to use that evidence. Thus, apparently, defendant Smart satisfied both the prosecutor and the trial court that she had reinvoked her privilege. Thereby, the defendant met its burden of showing that she had reinvoked the privilege.

The only way the question of defendant's silence came into this case was through Detective Cosgrove's testimony in apparent misunderstanding of or disregard for the court's suppression of such evidence. At that point, a mistrial was in order because the detective's answer "was designed to draw meaning from [the] silence...."