STATE of Missouri, Respondent,

v.

Randy Allen ROGERS, Appellant.

No. 21900.

Missouri Court of Appeals, Southern District, Division One.

June 4, 1998.

Susan McGraugh, Asst. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., John M. Morris, Asst. Atty. Gen., Jefferson City, for respondent.

CROW, Judge.

A jury found Appellant guilty of the class D felony of driving while intoxicated, §§ 577.010 and 577.023, RSMo 1994. The trial court sentenced Appellant to two years' imprisonment. This appeal followed.

Appellant's sole point relied on avers the trial court erred "when it overruled [Appellant's] objections to the State's announcement during opening statements that he had invoked his 5th Amendment right to remain silent during post-arrest interrogation and subsequently commented on his failure to make an exculpatory statement to the police during closing argument." Appellant maintains those remarks by the State were improper comments on his "post-arrest, post-*Miranda* silence."

All of the State's evidence came from the testimony of one witness, Trooper Mark D. Green of the Missouri State Highway Patrol.

Green was dispatched to the scene of an accident on a highway in a rural area. Upon arrival, he saw a pickup "that had exited the roadway and struck a ditch and was turned over onto its left side." One individual was "being attended to by the ambulance personnel." Another individual, identified by Green at trial as Appellant, was sitting on the road. Green noticed Appellant appeared intoxicated.

Green assisted Appellant in walking to Green's patrol car. There, Green asked Appellant "who was driving." According to Green, Appellant responded: "I'm sorry. I'm sorry for what I've done."

. Green placed Appellant inside Green's car. Green then proceeded with his investigation by talking to the individual receiving medical attention, identified by Green as James Jones.

After talking with Jones, Green returned to his car and placed Appellant under arrest for driving while intoxicated. Green continued his investigation without questioning Appellant.

After completing his investigation, Green returned to his car and "advised [Appellant] of the Miranda warning." Asked at trial whether Appellant responded, Green testified Appellant said: "I don't under—I don't understand a f___ thing."

Green took Appellant to the sheriff's office. En route, Green asked Appellant where Jones was sitting. Appellant's response, according to Green, was: "On the passenger side."

At the sheriff's office, Green explained the "Implied Consent Law" to Appellant and asked him to submit to a chemical test of his breath. Appellant refused.

The first of the two incidents complained of by Appellant in his point relied on occurred during the prosecutor's opening statement. There, we find this:

"[Prosecutor]: When [Green] got [Appellant] ... to the Sheriff's Department, the evidence will be that he started to fill out some other information and ... do some other tests and things, trying to get some other information from the defendant, the accused, at that time.

He will tell you, at that time, that the accused exercised his constitutional rights and did not want to make any other statements.

[Appellant's lawyer]: ... your Honor, I'd like to object and approach.

THE COURT: Approach the bench.

(Counsel approached the bench, and the following proceedings were had:)

THE COURT: All right, what's the objection?

[Appellant's lawyer]: My objection is that in this opening statement he's now made reference to my client's taking his

constitutional right to remain silent and that to be used against him, ah, was not to be used against him at trial in his reference to—

THE COURT: What did he say that you allege violates his constitutional right?

[Appellant's lawyer]: He's stating that when he got back, he—he refused to answer any further questions of the police officer. He has a right to remain silent. And he used at trial of his refusal to answer questions is a violation of his right to remain silent and can be used to incriminate him, and I would object. I would ask the jury be directed to disregard it. And I would also ask for a mistrial at this time, based upon that.

THE COURT: The Motion for Mistrial is denied.

The objection is overruled."

For convenience, we henceforth refer to the above incident as "Incident One."

During the prosecutor's direct examination of Green, the following dialogue occurred:

"Q During the time that you questioned [Appellant], did he ever deny driving the vehicle?

A Not that I recall, he never denied.

Q And, did he ever tell you that James Jones was driving that vehicle?

A No, he never did.

[Appellant's lawyer]: I'm—your Honor, again, I'm gonna object. Ah, and I hate to do it, but if I may ask to approach?

THE COURT: All right.

(Counsel approached the bench and the following proceedings were had:)

[Appellant's lawyer]: Again—again, I object because he's bringing up things that the defendant did not say after being Mirandized. Ah, the fact the defendant did not say something after—after Mirandized of his constitutional right to remain silent is inadmissible. And, again, I would ask for a mistrial; direct the jury to disregard it. An objection down the line.

THE COURT: Overruled."

For convenience, we henceforth refer to the above incident as "Incident Two."

Incident Two is not mentioned in Appellant's motion for new trial or in his point relied on in this appeal. We have set forth Incident Two as a preface to an incident that occurred later in the trial, during the opening segment of the prosecutor's final argument. The latter incident, henceforth referred to as "Incident Three," is the other incident about which Appellant's point relied on complains. Incident Three appears in the record thus:

"[Prosecutor]: ... Mr. Rogers did not ever say that James Jones was driving. Mr. Rogers—

[Appellant's lawyer]: Objection, your Honor.

[Prosecutor]:—did not ever deny that, that—

THE COURT: Overruled.

[Prosecutor]:—that he was; did not ever deny that he wasn't driving it."

Appellant declares the "controlling precedent" for this appeal is *State v. Flynn*, 875 S.W.2d 931 (Mo.App. S.D.1994). There, this court said:

"The law in Missouri is clear that a defendant's post-arrest silence is not admissible against him. *State v. Stuart*, 456 S.W.2d 19, 22 (Mo. banc 1970); [*State v.*] *Mabie*, 770 S.W.2d [331] at 334 [ (Mo.App. 1989) ]; *State v. Benfield*, 522 S.W.2d 830, 834 (Mo.App.1975). A defendant's right 'to be free from compulsory self-incrimination embraces not only the prerogative to remain silent but also that such silence shall not be allowed to prove guilt.' *State v. Roth*, 549 S.W.2d 652, 654 (Mo.App.1977). The State may not use post-arrest silence ... as affirmative proof of the defendant's guilt.... *State v. Mathenia*, 702 S.W.2d 840, 842 (Mo. banc 1986), *cert. denied*, 477 U.S. 909, 106 S.Ct. 3286, 91 L.Ed.2d 574 (1986).

In particular, the State may not introduce evidence or comment in argument regarding a defendant's failure to volunteer an exculpatory statement following his arrest. *State v. Leonard*, 606 S.W.2d 403, 407 (Mo.App.1980). Standing alone, a prosecutor's references during closing argument to a defendant's post-arrest silence

can merit reversal. *Mabie,* 770 S.W.2d at 335; *Roth,* 549 S.W.2d at 655."

*Flynn,* 875 S.W.2d at 934[3, 4] and [5].

Appellant maintains the prosecutor's remarks during Incident One and Incident Three violated the above rules and the trial court erred in overruling Appellant's objections to the prosecutor's comments.

We begin our analysis of Appellant's claim of error by examining Incident Three.

The only objection registered by Appellant's lawyer during Incident Three was: "Objection, your Honor."

 In Missouri, specific objections are required to arguments or statements of counsel; the objection must call the court's attention to the ground or reason for the objection. *State v. Lang,* 515 S.W.2d 507, 511[6] (Mo.1974). Where an accused's lawyer, during a prosecutor's argument, says only "Objection," no issue is preserved for review. *Id.* at [9]. Applying *Lang,* we hold Appellant's lawyer preserved nothing for review during Incident Three by saying only "Objection, your Honor." Consequently, Appellant's claim that the trial court erred in overruling his lawyer's objection during Incident Three is ineligible for review.

As reported earlier, Incident Two is not mentioned in Appellant's point relied on.

 An appellate court reviews only issues raised in the points relied on in an appellant's brief. *State v. Martineau,* 932 S.W.2d 829, 833[6] (Mo.App. S.D.1996). Accordingly, no issue regarding Incident Two is presented for review.

It is thus apparent that the outcome of this appeal hinges on whether the trial court committed reversible error in overruling the objection of Appellant's lawyer during Incident One.

There, Appellant's lawyer[1] objected when the prosecutor told the jurors Green would testify that at the sheriff's office, Appellant "exercised his constitutional rights and did not want to make any other statements." Appellant's lawyer protested to the trial court that the prosecutor's comment was an impermissible reference to Appellant's exercise of his constitutional right to remain silent. As we have seen, *Flynn* holds an accused's post-arrest silence is inadmissible against him and cannot be commented on by a prosecutor. 875 S.W.2d at 931.

The State concedes that generally, a prosecutor "may not use a defendant's silence, at the time of arrest and after receiving *Miranda* warnings, as affirmative proof of guilt or for impeachment purposes." However, argues the State, "[T]he prohibition against the use of a defendant's post-arrest, post-*Miranda* silence has no application where the defendant elects not to remain silent." As authority for that proclamation, the State cites *Anderson v. Charles,* 447 U.S. 404, 100 S.Ct. 2180, 65 L.Ed.2d 222 (1980).

In *Anderson,* the accused was arrested while driving a stolen automobile. 100 S.Ct. at 2180. He told a detective he stole it at a particular site. *Id.* Investigation revealed the vehicle belonged to a man who had been murdered a few days earlier. *Id.* At trial (for the murder), the accused testified he stole the vehicle at a location two miles distant from the site he gave the detective at time of arrest. *Id.* at 2180–81. On cross-examination, the prosecutor questioned the accused about the discrepancy between his testimony and his statement to the detective. *Id.* The accused was convicted. *Id.* at 2181.

The issue before the Supreme Court of the United States was whether the cross-examination violated the accused's right to remain silent (and the attendant assurance, "at least implicitly," that his silence would not be used against him). *Id.* at 2181–82. The Supreme Court held:

> "*Doyle* [*v. Ohio,* 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976)] bars the use against a criminal defendant of silence maintained after receipt of governmental assurances. But *Doyle* does not apply to cross-examination that merely inquires into prior inconsistent statements. Such questioning makes no unfair use of silence because a defendant who voluntarily speaks after receiving *Miranda* warnings has not been induced to remain silent. As

---

1. Appellant's lawyer at trial is not the lawyer representing Appellant in this appeal.

to the subject matter of his statements, the defendant has not remained silent at all." *Anderson*, 100 S.Ct. at 2182[1].

The Supreme Court held the prosecutor's questions were not designed to "draw meaning from [the accused's] silence, but to elicit an explanation for a prior inconsistent statement." *Id.*

We fail to see how *Anderson* supports the State.

Appellant did not testify. Had Appellant testified that Jones was driving the pickup, *Anderson* would have allowed the prosecutor to cross-examine Appellant about his statement to Green that Jones was on the passenger side. However, nothing in *Anderson* suggests the prosecutor could properly inform the jurors in opening statement that Appellant, after arriving at the sheriff's office, "exercised his constitutional rights and did not want to make any other statements."

We have read *State v. Crow*, 728 S.W.2d 229 (Mo.App. E.D.1987), also cited by the State. *Crow* does not support the State's position. There, the accused, after arrest, said "he was on his way to Jeff City now . . . [and] it would be for nothing." *Id.* at 230. The accused testified at trial, presenting an exculpatory account of the events in issue. *Id.* The prosecutor asked the accused if he told the arresting officers his story. *Id.* The prosecutor also asked the officers if the accused had related his story to them. *Id.* During closing argument, the prosecutor commented about the accused's failure to mention his story prior to trial. *Id.*

The Eastern District of this Court reversed the conviction in *Crow* and remanded the case for retrial, *id.* at 232, holding the accused's statement about being "on his way to Jeff City" did not waive his right to remain silent, hence the prosecutor's conduct was improper. *Id.* at 231[3].

The State also cites *State v. Frentzel*, 717 S.W.2d 862 (Mo.App. S.D.1986), which we have likewise read. *Frentzel* differs from the instant case in that the trial court there *sustained* the accused's objection when the prosecutor, during opening statement, told the jurors that upon being asked by investigating officers about some burglar's tools,

the accused "knew nothing about that, made no comment." *Id.* at 866.

Additionally, the trial court in *Frentzel* admonished the jurors to disregard the prosecutor's comment. *Id.* The issue before this court in *Frentzel* was whether the trial court erred in refusing to declare a mistrial. *Id.*

This court noted in *Frentzel* that after the accused's arrest, he made some exculpatory statements before declining to comment about the burglar's tools. *Id.* Given those circumstances, this court held the refusal to declare a mistrial was not error. *Id.* at [6].

■ In the instant case, Appellant made no exculpatory statement to Green. The two statements Appellant made—his expression of sorrow for what he had done and his revelation that Jones was on the passenger side—were inculpatory. Furthermore, unlike *Frentzel*, the trial court in the instant case *overruled* the objection of Appellant's lawyer during Incident One. Because of those differences, *Frentzel* does not rescue the State in the instant case.

Here, there were two occupants of the pickup: Appellant and Jones. The State's evidence that Appellant was driving when the mishap occurred consisted of (1) Appellant's statement to Green that he (Appellant) was sorry for what he had done, and (2) Appellant's disclosure to Green that Jones was on the passenger side.

Apparently, the prosecutor's purpose in telling the jurors during Incident One that Appellant "exercised his constitutional rights and did not want to make any other statements" was to imply that had Appellant said anything at the sheriff's office, it would have been inculpatory (as were his two earlier statements). The prosecutor's comment was a subtle message to the jurors that Appellant volunteered no exculpatory statement.

As we have seen, a prosecutor may not comment regarding an accused's failure to volunteer an exculpatory statement following his arrest. *Flynn*, 875 S.W.2d at 934[4].

Had the prosecutor, after Incident One, said nothing else about Appellant's post-arrest silence, the trial court's ruling in Incident One might not have required reversal. However, the prosecutor, during Incident

Two, elicited testimony from Green that Appellant never denied driving the pickup and never said Jones was driving. The prosecutor pursued the theme during Incident Three, reminding the jurors that Appellant never said Jones was driving and never denied he (Appellant) was driving.

Although Incident Two is unmentioned in Appellant's point relied on, and Appellant's lawyer's objection during Incident Three was too vague to preserve any issue for appellate review, it is nonetheless evident that the prosecutor exploited the favorable ruling during Incident One to drive home the point that Appellant never said anything exculpatory after his arrest. In that respect, the instant case is similar to *Crow*, 728 S.W.2d at 230–31.

Consistent with the holding in *Crow*, we reverse the judgment in the instant case and remand it to the trial court for further proceedings.

GARRISON, P.J., and PREWITT, J., concur.