**STATE of Missouri, Plaintiff–Respondent,**

v.

**Jesse Vohn DORRIS, Defendant–Appellant.**

**No. 27313.**

Missouri Court of Appeals, Southern District, Division One.

May 24, 2006.

[1]. All statutory references are to RSMo. (2000), and the Cumulative Supplement (2005), unless otherwise indicated.

Ellen H. Flottman, Columbia, MO, for Appellant.

Jeremiah W. Nixon, Atty. Gen., and Jayne T. Woods, Assistant Atty. Gen., Jefferson City, MO, for Respondent.

GARY W. LYNCH, Judge.

Appellant, Jesse Vohn Dorris ("Defendant"), was charged in Cape Girardeau County with felony possession of a controlled substance, in violation of section 195.202; felony attempted stealing of a firearm, in violation of section 564.011; and misdemeanor resisting arrest, in violation of section 575.150.[1] After a change of

---

1. All references to statutes are to RSMo 2000, unless otherwise indicated.

venue to Bollinger County and the dismissal by the State of the latter two charges, a jury trial was held on the felony possession of a controlled substance charge. Defendant was found guilty and sentenced by the trial court as a prior drug offender to ten years in the Department of Corrections. This appeal followed.

### 1) *Factual and Procedural Background*

Defendant does not challenge the sufficiency of the evidence, therefore we view the evidence presented to the jury in the light most favorable to the jury's verdict, disregarding all contrary evidence and inferences. *State v. Lopez*, 128 S.W.3d 195, 196 (Mo.App.2004).

On February 6, 2005, Sergeant Scott Eakers of the Jackson Police Department arrested Defendant on the parking lot of Stacy's Carpets in Jackson, Missouri. Defendant was handcuffed, patted down, placed in a police vehicle, and then transported to the Jackson Police Department. Before being placed in the police vehicle, Sergeant Eakers advised Defendant of his rights according to *Miranda*,[2] and Defendant indicated that he understood his rights.

Upon arriving at the police station, Defendant was placed in the booking room while Sergeant Eakers and another officer removed his jacket, only uncuffing one hand of the Defendant at a time. Defendant was asked to remove his shoes, and he complied. Defendant was then fingerprinted. During the course of the booking process, Sergeant Eakers and Defendant engaged in conversation that included, among other topics, Defendant's criminal history and drug use. Sergeant Eakers then left the booking room to get information from dispatch but warned the Defendant that he was under surveillance.

While in the dispatch office, Sergeant Eakers observed Defendant over the video surveillance monitor fidgeting with his right sock. Sergeant Eakers quickly returned to the booking room, inspected Defendant's sock, and noticed a hole in Defendant's right sock. When Sergeant Eakers reached in the hole, he pulled out a bag of what he believed, and what was later confirmed by chemical analysis, to be methamphetamine.

Sergeant Eakers asked Defendant, "Jesse, what's this?" Defendant answered, "Another charge." Sergeant Eakers then asked Defendant if he wanted to talk to the Drug Task Force, and Defendant responded, "No, I'd rather go to prison."

At trial, Defendant defended the possession charge on the basis that the package containing the methamphetamine found in his sock was located on the booking room floor before he came into the room. During closing argument, the State made the following statements without defense objection:

> Let's think about what Sergeant Eakers said. He said, "You know what this is?" We even saw it. We saw on the video. "You know what this is, Jesse? It's another charge. Yeah, it's another charge." He didn't say, no way, what's going on? That stuff was already here. I was just kicking it around. Then he said, "You want to help yourself out, help the Drug Task Force investigator and let him know where you got this from?" He said, "I'd rather go to prison." Do people want to go to prison for something they find on the floor? I would argue that he directly took responsibility for possession of this item, for knowing it was there by—he knew his goose was cooked. He said, "Send

2. *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

me to prison." Are those the words of a person who just accidentally stumbled across some substance on the floor of the police station? Of course not. He knew it was there the whole time and he knew he was caught, hence the words, nah, go to prison. Words of a guilty man.

The jury returned a verdict of guilty, and the trial court sentenced Defendant as a prior drug offender to a term of ten years' imprisonment. This appeal follows, and Defendant raises one point: that the trial court plainly erred in permitting the State "to argue during closing that the jury should infer guilt based on Defendant's failure to offer an exculpatory statement" following Defendant being advised he had the right to remain silent.

### 2) *Standard of Review*

█ Defendant concedes that this issue was not properly preserved in the trial court and requests plain error review under Rule 30.20.[3] This rule permits this Court to examine a claim of error, notwithstanding a party's failure to preserve the issue for appeal, to determine if it resulted in manifest injustice or miscarriage of justice that affected a defendant's substantial rights. Whether to grant plain error review lies within the reviewing court's discretion. *State v. Johnson*, 95 S.W.3d 221, 225 (Mo.App.2003).

█ Missouri appellate courts have construed plain error review as a two-step process. *State v. Hagan*, 113 S.W.3d 260, 267 (Mo.App.2003). First, a court must decide " 'whether the allegation of error facially established substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. In effect, an appellate court must determine whether, on the face of the claim, "plain error" has,

in fact, occurred.' " *Id.* (quoting *State v. Brown*, 97 S.W.3d 97, 100 (Mo.App.2002)). If not, we should decline to exercise our discretion to further review the claim. *Id.* If so, " 'step two of the process authorizes the appellate court [, in its discretion,] to determine whether the claimed error resulted in manifest injustice or a miscarriage of justice.' " *Id.* (quoting *Brown*, 97 S.W.3d at 100).

### 3) *Discussion*

█ As a general rule, an accused's silence while he is under arrest is not admissible against him because he is under no duty to speak. *State v. Frentzel*, 717 S.W.2d 862, 866 (Mo.App.1986). "[A]n accused's failure to volunteer an exculpatory statement or deny or explain an incriminating fact—while he is under arrest—is inadmissible." *Id.*

Defendant claims that "[t]he prosecutor [in his closing argument] provided the jury with specific exculpatory statements [Defendant] failed to volunteer: '[Defendant] didn't say, 'no way, what's going on? That stuff was already here. I was just kicking it around.' " Focusing on this sentence in the State's closing argument, Defendant argues that the State violated the above-stated general rule.

█ However, this rule is inapplicable where the accused waives his Fifth Amendment privilege by making statements while in custody. *Id.* Where an accused, while in custody and having previously been informed of his right to remain silent, elects to answer questions or make statements, he has chosen not to remain silent and has waived his right to do so. *Id.*

█ Defendant was arrested, advised of his *Miranda* rights, and taken to the Jack-

---

**3.** All references are to Missouri Court Rules 2006 unless otherwise indicated.

son Police Department. Throughout the booking process, Defendant engaged in conversation with Sergeant Eakers on various topics including his prior convictions, prior drug use and whether Defendant would be willing to help the police department in other drug investigations. Upon the discovery of the methamphetamine in Defendant's sock, he volunteered an answer that was apparently and arguably inculpatory. Defendant, having previously been advised of his right to remain silent, never attempted to invoke that right. Having been taken into custody, advised of his right to remain silent, and acknowledging his understanding of his right to remain silent, Defendant chose to answer Sergeant Eakers' questions. By answering these questions, Defendant elected not to remain silent. " 'If, however, the defendant answers questions or makes a statement while in custody, the right to remain silent and not have the State comment on that silence is waived *as to the subject matter of those statements.*' " *State v. Weicht*, 835 S.W.2d 485, 487 (Mo.App.1992) (quoting *State v. Crow*, 728 S.W.2d 229, 230 (Mo.App.1987)). Therefore, the State could fairly comment on Defendant's statements as well as the context of such statements. *Frentzel*, 717 S.W.2d at 866.

Defendant points to the similarities of the State's closing argument to the closing argument, which we held was plain error, in *State v. Flynn*, 875 S.W.2d 931, 936

(Mo.App.1994). While the words used in the closing arguments may be similar, the factual contexts of these cases are quite different. In *Flynn*, the defendant exercised his right to remain silent and made no statements following his arrest. *Id.* at 932. This fact distinguishes *Flynn* from the instant case.

Defendant was asked: "Jesse, what's this?" Defendant responded: "Another charge." Defendant did not remain silent, as was his right. Reviewing the complained of closing argument in context, it is clear that the State was commenting on this statement made by Defendant. Given the defense proffered by Defendant, that the controlled substance was already in the booking room, the State's argument also provided the context within which Defendant made this inculpatory statement. The State's argument was not an impermissible reference to Defendant's right to remain silent because Defendant failed to remain silent.

Therefore, under the first step of the test for plain error, we hold that on the face of the claim no plain error, in fact, occurred.[4] *Hagan*, 113 S.W.3d at 267. *See also State v. Shoults*, 147 S.W.3d 163, 167 (Mo.App.2004). We decline to exercise our discretion to further review the claim.[5] *Id.* Defendant's point is denied.

---

4. "[A] trial court's failure to *sua sponte* address improper statements made in closing argument rarely constitutes plain error requiring reversal, because without an objection or request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention." *Hagan*, 113 S.W.3d at 267.

5. The video tape of the incident was viewed by the jury. Even if the jury believed the defense theory that the controlled substance was located on the floor of the booking room

before Defendant entered the room, Defendant took possession of the methamphetamine, wherever it came from, when he placed it in his sock. His statements to the Sergeant would indicate that he in fact knew it was contraband at the time he placed it in his sock. In short, there was overwhelming evidence against Defendant and, if there was any error in the closing argument by the State, which we hold there was not, it did not alter the result of the trial and, therefore, did not prejudice Defendant. *See State v. Womack*, 967 S.W.2d 300, 303 (Mo.App.1998).

### 4) *Clerical Error in Judgment*

Although the preceding discussion disposes of the sole point presented by Defendant, one further matter requires our attention. The "Judgment" contained in the record on appeal appears to contain a clerical error, in that it incorrectly indicates that a finding on the issue of whether Defendant is a prior drug offender is "Not" Applicable. The information charges Defendant as a prior drug offender. The transcript discloses that the trial judge made a finding in open court, on the record, with a specific waiver of any objection by the defendant, and beyond a reasonable doubt that Defendant was a prior drug offender. Defendant was sentenced based on this finding. If there had been no such finding, the ten-year sentence imposed on Defendant would be outside of the range of punishment.

"The failure to memorialize accurately the decision of the trial court as it was announced in open court was clearly a clerical error." *State v. Taylor,* 123 S.W.3d 924, 931 (Mo.App.2004). Rule 29.12 authorizes a trial court to correct clerical errors in the judgment that result from oversight or omission. *Id.* Accordingly, while we affirm Defendant's conviction and sentence, we must remand this case with directions to the trial court to enter an amended written judgment reflecting the judgment and sentence as announced on the record by the trial judge in open court.

RAHMEYER, P.J., and PARRISH, J., concur.