**STATE of Missouri, Respondent,**

v.

**Travis J. MATZKE, Appellant.**

**No. SD 32059.**

Missouri Court of Appeals,
Southern District,
Division Two.

March 27, 2013.

---

Emmett D. Queener, Columbia, for appellant.

Chris Koster, Atty. Gen., Karen Louise Kramer, Asst. Atty. Gen., Jefferson City, for respondent.

DANIEL E. SCOTT, P.J.

Travis Matzke got mad at his aunt, in her home, and called her a "f*cking bitch." She asked Matzke to leave. "F*ck you, bitch," he replied.

Matzke's uncle took issue and backed Matzke out of the house. Outside, Matzke clubbed and broke his uncle's arm with "something like" a handle of an axe or a shovel. The uncle grabbed a splitting maul and chased Matzke, who ran to a waiting car and sped away.[1]

Matzke was arrested and tried, as a persistent offender, on felonies of assault and armed criminal action (ACA).[2] He

---

1. We summarized these facts consistently with our standard of review, which requires us to view the record most favorably to the jury's verdict, disregarding all contrary evidence and inferences. *State v. Dorris*, 191 S.W.3d 712, 714 (Mo.App.2006). The state-

ment of facts offered in Matzke's brief grossly disregards this key principle.

2. He was also charged with, tried for, and ultimately found guilty of misdemeanor trespass.

claimed self-defense. To support that theory at trial, the defense offered a photo taken by the investigating officer, Sergeant Lowe, which showed a cut on Matzke's leg. Matzke testified that he "felt the cut" while he tried to evade his uncle with the splitting maul.

Rejecting self-defense, the jury found Matzke guilty of second-degree assault and ACA. His appeal raises four points.

### Point I—Rebuttal Testimony

■ After the defense rested its case on self-defense, the state called Sergeant Lowe in rebuttal. Matzke now complains that the sergeant "repeated [the uncle]'s entire story" and "the jury likely substituted Sergeant Lowe's conclusion for their own."

■ These objections were not raised below.[3] A complaint is not preserved for our review absent a timely, specific trial objection on the same grounds cited on appeal. *State v. Tisius*, 362 S.W.3d 398, 405 (Mo. banc 2012). Point denied.[4]

### Point II—Description of Observed Injury

■ The following colloquies occurred during Sergeant Lowe's testimony. First, defense counsel inquired as follows:

Q. Officer Lowe, did you see any blood on Mr. Matzke.

A. I saw a place I believe was in the middle of his right lower leg. He showed and indicated an injury there to me. I believe I took a photograph of it.

Q. I am going to show you what has been marked as Defendant's Exhib-

it 3. Is that what we are talking about?

A. Correct, it is.

Q. You took that picture?

A. Yes, I did.

Q. And that picture demonstrates a cut and some blood on his lower leg?

A. Correct.

Then this exchange occurred in the state's re-direct:

Q. Did that appear to be a fresh injury?

[DEFENSE COUNSEL]: Judge, I object. He is not qualified to render those opinions.

THE COURT: I am going to overrule that objection.

A. I did not notice any wet blood on it. I can't speak to the actual age of the injury, no.

Point II asserts that the "fresh injury" question sought a medical opinion that Sergeant Lowe was not qualified to offer. We disagree.

■ Law enforcement officers and lay witnesses may testify to what they saw. *See Elmahdi v. Ethridge*, 987 S.W.2d 366, 372 (Mo.App.1999). That is all that Sergeant Lowe did. His statement that he "did not notice any wet blood" required no medical expertise.

"The trial court enjoyed broad discretion to admit or exclude this evidence. It erred only if it clearly abused that discretion, *i.e.*, a ruling so arbitrary, unreasonable, and against the logic of the circumstances as to shock the sense of justice and indicate a lack of careful consideration." *State v. Sanders*, 353 S.W.3d 721, 722 (Mo.App.

---

3. Defense counsel's objections were directed to testimony about Matzke's injuries. One of these objections is the basis for Point II.

4. *Ex gratia* review of the record reveals no manifest injustice or miscarriage of justice warranting plain error relief.

2011). That was not the case here. We deny Point II.

### Point III—Plain Error Claim

■ In a claim of plain error, Matzke contends that the court should have declared a mistrial *sua sponte* after jurors heard of Matzke's fist fight with a woman. Matzke characterizes that testimony as a prior bad act introduced "for the purpose of showing propensity."

"Missouri courts have been reluctant to find error when a trial court declines to take action *sua sponte* during cross-examination. Indeed, such invitations have been rejected in all but the most unusual circumstances." *State v. Tramble*, 383 S.W.3d 34, 40 (Mo.App.2012) (internal citations and quotation marks omitted).

Thus, a trial court's failure to act *sua sponte* is rarely plain error. *Id.* Further, the defense elicited this testimony,[5] and "this Court will not use plain error to impose a *sua sponte* duty on the trial court to correct Defendant's invited errors." *State v. Bolden*, 371 S.W.3d 802, 806 (Mo. banc 2012). Point III fails.

### Point IV—Correction of Sentencing Error

■ Finally, Point IV notes that the trial court's oral pronouncement of sentence (nine years assault, three years ACA) was transposed in its written judgment (three years assault, nine years ACA).

■ A written judgment should reflect the oral pronouncement of sentence before the defendant. *State v. Patterson*, 959 S.W.2d 940, 941 (Mo.App.1998). The parties agree that we should remand with instructions for the trial court to enter an amended written judgment correcting this clerical error. *See State v. Whiteley*, 294 S.W.3d 114, 120 (Mo.App.2009). We grant Point IV.

### Conclusion

We remand this case with instructions to enter an amended written judgment reflecting that Matzke was sentenced to nine years for assault and three years for ACA. In all other respects, the judgment and convictions are affirmed.

JEFFREY W. BATES, and MARY W. SHEFFIELD, JJ., Concur.

---

5. We quote from defense counsel's cross-examination of the uncle:

Q. If [Matzke] had any cuts on him, where did he get them?

A. What cuts? I don't know of anything. This is the first that I have ever heard about it.

Q. So, if there were any cuts, you didn't have anything to do with it. Correct?

A. Exactly.

Q. You don't know where he got those cuts. Correct?

A. No, I know him and Jasmine got in a fist fight at his mom's trailer just prior to that, and that perhaps could have been it.