**STATE of Missouri,
Plaintiff/Respondent,**

v.

**Gregory T. O'TOOLE,
Defendant/Appellant.**

**No. ED 79997.**

Missouri Court of Appeals,
Eastern District,
Division Four.

June 25, 2002.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 7, 2002.

Application for Transfer Denied Sept. 24, 2002.

Alan G. Kimbrell, Chesterfield, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Stephanie Morrell, Asst. Atty. Gen., Jefferson City, MO, for Respondent.

SHERRI B. SULLIVAN, Presiding Judge.

### Introduction

Gregory T. O'Toole (Defendant) appeals from a judgment of conviction of unlawful use of a weapon and impersonation of a law enforcement officer. Defendant alleges trial court error in denying his motion for judgment of acquittal at the close of all the evidence because the peaceful traveler exemption to the unlawful use of a weapon charge applied and the impersonation of a law enforcement officer conviction was unsupported by sufficient evidence. Defendant also alleges instructional error on both charges. We affirm the impersonation of a law enforcement officer conviction and reverse the unlawful use of a weapon conviction.

*Factual and Procedural Background*

Viewed in the light most favorable to the verdict, the evidence presented at trial established the following relevant facts. On August 6, 2000, Phillip Hoffman (Hoffman), a corporal with the Missouri State Highway Patrol, was patrolling eastbound I–70 in Warren County when he observed a car with dealer license plates traveling about a half car-length behind the vehicle in front of it. Hoffman entered traffic and followed the car for almost two miles. The car continued to follow the vehicle in front of it at an unsafe distance so Hoffman stopped the car for following another vehicle too closely.

Hoffman approached the driver's side of the car, and before he could ask Defendant for his driver's license and proof of insurance, Defendant reached into his pocket and pulled out a bundle of business cards, money and a badge rubber banded together. Defendant held the badge up, told Hoffman that he was a police officer, and placed the bundle back into his pocket.

Hoffman asked Defendant for his identification. Defendant gave Hoffman a Missouri driver's license that identified him as Gregory T. O'Toole with a December 1944 birth date. Hoffman asked Defendant if he had a commission card that identified him as a police officer. Defendant gave Hoffman a card with the name Daniel J. O'Toole and a November 21, 1914 birth date. Hoffman asked Defendant why his driver's license name and birth date differed from the commission card. Defendant responded that Daniel was his brother's name but that the card was his.

Hoffman then asked to see other identification that identified Defendant as a police officer. Defendant gave Hoffman a St. Louis Police Officer Association membership card with the name Daniel O'Toole but with no picture or other identifying information. Hoffman asked Defendant why this card showed the name Daniel and not Gregory. Defendant stated that he did undercover investigations for the Circuit Attorney's office and that his brother works for the office too. Hoffman asked Defendant how the Circuit Attorney's office kept his and his brother's records separate if they work for the same department and use the same name. Defendant replied "that's just how they did it."

Hoffman looked more closely at the commission card, and he noticed that the picture appeared to be cut out of the card. Hoffman also noticed that the card was very old, the corners were coming apart, and the card was able to be folded away, exposing the back of the picture that had been taped to the card. The back of the picture had a sticker that was the same type of organ donor sticker issued on older driver's licenses. Hoffman further noticed that Defendant had five expired driver's licenses for Gregory O'Toole with him. The licenses were in three-year sequences from 1985 to 2000, with the year 1991 missing from the sequence.

Hoffman asked Defendant if he had a weapon in the car because he was claiming to be a police officer and Hoffman normally asked off-duty police officers about weapons in their vehicles. Defendant stated that he had a gun in the glove box. Hoffman did not seize the gun at that time because Defendant still was claiming to be a police officer and Hoffman still was trying to determine the truth of the claim.

Hoffman then asked to see the badge that Defendant originally showed him, and Defendant gave it to him. The badge was an investigator badge from the Circuit Attorney's office with a badge number of 32. Hoffman asked Defendant what was his badge number, and Defendant responded "36." When Hoffman informed him that the badge number was 32, Defendant stat-

ed "yeah, that's what it is. I just forgot. I thought it was 36."

Hoffman asked Defendant who was his immediate supervisor, and Defendant responded "Joyce Hayes." Hoffman asked to whom he was directly responsible, to which Defendant responded that his father was a retired judge and that he had been a police officer in Texas. Whenever Hoffman inquired who was his supervisor, Defendant would begin naming people who Hoffman could call who knew Defendant. Hoffman recognized one name as a retired highway patrolman. Hoffman again asked Defendant who was his immediate supervisor that he could call to verify that he was a police officer, and again Defendant stated Joyce Hayes.

Hoffman returned to his patrol car and called the St. Louis City Police Department to verify that Defendant was a police officer there, which Hoffman was unable to verify. Hoffman then placed Defendant under arrest for impersonation of a law enforcement officer and read Defendant his *Miranda* warnings. Hoffman searched Defendant's car and found a Smith and Wesson .38 caliber five-shot revolver loaded with five rounds of .38 caliber ammunition in a black holster inside the unlocked glove box.

After transporting Defendant to jail, Hoffman spoke with Defendant, stating that it was unusual for a police officer not to remember his badge number. For the first time, Defendant stated that he was not a police officer. He stated that he was an investigator with the Circuit Attorney's office doing about one investigation per month, but that he had not done any investigations for about three months.

Subsequently, Hoffman contacted the St. Louis Circuit Attorney's office, the St. Louis City Police Department, the Florissant Police Department, and Defendant's brother's house. Hoffman did not receive any documentation or anything else that indicated that Defendant was a police officer. According to the St. Louis City Circuit Attorney's office personnel records, which went as far back as 1948, the office had never employed a Gregory O'Toole. A Daniel O'Toole and a Terrence Joseph O'Toole had been employed with the office at some time.

Defendant testified that at the time of his arrest, he was traveling from his house in Lake of the Ozarks to his primary house in Ferguson, Missouri. He stated that he had the gun for protection while traveling the highway.

Defendant was charged by second amended information with one count of unlawful use of a weapon (Count I), a Class D felony in violation of Section 571.030.1(1),[1] one count of false impersonation (Count II), a Class A misdemeanor in violation of Section 575.120, and one count of following another vehicle too closely (Count III), a Class C misdemeanor in violation of Section 304.017. At the close of all the evidence at trial, Defendant filed a motion for judgment of acquittal, which the trial court denied. Subsequently, the jury returned a verdict finding Defendant guilty on all three counts. Defendant filed a Motion for New Trial, which the trial court also denied. The trial court entered a judgment in accordance with the jury verdict and sentenced Defendant to concurrent thirty-day jail terms and a $500 fine on each of Counts I and II and a $50 fine on Count III.[2]

---

1. All statutory references are to RSMo (2000), unless otherwise indicated.

2. Defendant raises no point of error relating to the following another vehicle too closely conviction, and thus this conviction is affirmed.

## Discussion

### I. Application of Peaceful Traveler Exemption to Unlawful Use of a Weapon

■ Defendant raises four points on appeal. In his first point, Defendant argues that the trial court erred in denying his motion for judgment of acquittal at the close of all the evidence for the unlawful use of a weapon charge because evidence was introduced showing that Defendant was "traveling in a continuous journey peaceably through this state," without evidence to the contrary, and the State failed to meet its burden of negating this special negative defense.

Section 571.030 provides in relevant part:

1. A person commits the crime of unlawful use of weapons if he or she knowingly:

   (1) Carries concealed upon or about his or her person a knife, a firearm, a blackjack or any other weapon readily capable of lethal use;

   . . .

3. .... Subdivision (1) of subsection 1 of this section does not apply when the actor ... is traveling in a continuous journey peaceably through this state.

■ The peaceful traveler's exemption enables travelers to protect themselves on the highways against perils that typically do not face them back home among their neighbors. *State v. Murray,* 925 S.W.2d 492, 493 (Mo.App. E.D.1996). The exemption applies to interstate and intrastate travel, but its application depends on whether the defendant was a traveler on a journey. *Id.* at 494. Further, the exemption does not extend to persons traveling through the state during the commission of a felony or for any unlawful purpose or for a breach of the

peace. *State v. Purlee,* 839 S.W.2d 584, 592 (Mo. banc 1992). For purposes of the exemption, "peaceably" means not quarrelsome, friendly, without contention or strife, quiet and orderly. *State v. Collins,* 879 S.W.2d 585, 586 (Mo.App. W.D.1994). Once a defendant raises the defense that he or she is within the exemption, the State has the burden of proving the defendant is not within the exemption. *Purlee,* 839 S.W.2d at 591.

Defendant presented evidence that he was traveling in a continuous journey peaceably through the state. He was traveling from his house at Lake of the Ozarks to his house in Ferguson. The Count I verdict-directing instruction required the jury to find that Defendant was not traveling in a continuous journey peaceably through this state to find him guilty of unlawful use of a weapon. We find that the State did not prove that Defendant was not within the peaceful traveler's exemption. The State argues that Defendant's impersonation of a law enforcement officer brought an unlawful purpose to Defendant's travels, and therefore Defendant could not be "peaceably" traveling. We disagree.

The *purpose* of Defendant's travel was not unlawful; rather, it was to return to his primary house after a stay at his second house. *See State v. White,* 58 S.W.3d 627, 631 (Mo.App. W.D.2001). The State presented no evidence to suggest that Defendant's travel had an unlawful purpose or that any illegal activity was related to the purpose of his trip. *Cf., e.g., State v. Wilkerson,* 796 S.W.2d 388, 394 (Mo.App. S.D.1990) (considerable quantity of methamphetamine, about thirty grams in fourteen plastic bags, and cocaine found in the defendant's truck); *King v. State,* 839 S.W.2d 709, 712 (Mo.App. W.D.1992) (in addition to three semi-automatic firearms, one revolver, and stun guns, binoculars,

two FM transceivers, rubber gloves, a ski mask, a notebook, a photograph of a man with a large amount of cash and a mobile phone, two fake beards, a package of "theatrical gruesome skin," wigs, fake mustaches, makeup, and hair color were found in the defendant's car).

Defendant's impersonation of a police officer was incidental to, not related to, the purpose of his travel. Had he not been stopped by Hoffman, Defendant would not have had as a purpose of his journey to impersonate a police officer. Thus, Defendant was a traveler on a journey, traveling not during the commission of a felony, for any unlawful purpose, or for a breach of the peace. Therefore, Defendant was entitled to the benefit of the peaceful traveler's exemption.

Accordingly, the trial court erred in denying Defendant's motion for judgment of acquittal at the close of all the evidence for his unlawful use of a weapon conviction because the State failed to meet its burden of proving that Defendant was not within the peaceful traveler's exemption. Defendant's point one on appeal is granted.

In light of this conclusion, Defendant's point two on appeal, alleging error in the Count I verdict-directing instruction for not including a Paragraph (Fourth) stating that the weapon was readily accessible, is moot.

II. Sufficiency of the Evidence for Impersonation of a Law Enforcement Officer

In his third point on appeal, Defendant argues that insufficient evidence existed for the impersonation of a law enforcement officer conviction because the State's evidence showed that Hoffman did not act in reliance upon Defendant's pretended official authority.

In reviewing a challenge to the sufficiency of the evidence supporting a criminal conviction, we do not weigh the evidence nor the credibility of the witnesses but rather, we determine whether there is sufficient evidence from which a reasonable trier of fact might have found the defendant guilty beyond a reasonable doubt. *State v. Shinn,* 921 S.W.2d 70, 72–73 (Mo.App. E.D.1996). The evidence, including all reasonable inferences drawn therefrom, is viewed in the light most favorable to the verdict, and all evidence and inferences to the contrary are disregarded. *Id.* at 72. The trier of fact determines the credibility of the witnesses. *Id.* at 73. The trier of fact may believe all, some or none of the testimony of a witness when considered with the facts, circumstances and other testimony in the case. *Id.*

Section 575.120.1 provides in relevant part:

A person commits the crime of false impersonation if he:

(1) Falsely represents himself to be a public servant with purpose to induce another to submit to his pretended official authority or to rely upon his pretended official acts, and

. . .

(b) Causes another to act in reliance upon his pretended official authority; . . . .

Defendant admits in his brief that after Hoffman stopped him for the traffic offense of following another vehicle too closely, Defendant "immediately identified himself as a police officer, which he was not." Defendant further states that the only rational explanation for this false representation was to induce Hoffman not to issue a ticket. Defendant did not just "lie" to Hoffman "in an asinine attempt to avoid a traffic ticket." Rather, he falsely represented himself to be a police officer both orally and with information cards with the

purpose to induce Hoffman to rely upon Defendant's pretended official authority. No evidence suggested that Defendant's actions were intended as a practical joke. *See State v. Francis*, 918 S.W.2d 356, 357–58 (Mo.App. W.D.1996).

Further, sufficient evidence existed from which a reasonable juror might have found that Hoffman acted in reliance upon Defendant's pretended official authority. Hoffman spent time both during the traffic stop and after Defendant's arrest attempting to determine if Defendant in fact was a police officer. During his investigation, Hoffman contacted several people to request documentation regarding Defendant's alleged status as a police officer. Also, Hoffman did not seize Defendant's weapon immediately upon Defendant telling Hoffman that he had a gun in the glove box, thereby compromising Hoffman's safety, because Hoffman still was trying to determine the truth of Defendant's claim of being a police officer. Hoffman's actions, continuing after Defendant's arrest, indicate that Hoffman attached at least some credibility to Defendant's representation.

Accordingly, we find sufficient evidence from which a reasonable juror might have found Defendant guilty beyond a reasonable doubt of impersonation of a law enforcement officer. Thus, the trial court did not err in denying Defendant's motion for judgment of acquittal at the close of all the evidence for his impersonation of a law enforcement officer conviction. Defendant's point three on appeal is denied.

III. Impersonation of a Law Enforcement Officer Instruction

■■■ In his fourth point on appeal, Defendant argues that the trial court erred in giving Instruction No. 7, the verdict-directing instruction for false impersonation, because it failed to describe the act that

Hoffman performed in reliance upon Defendant's pretended official authority as required by Paragraph Fourth of the MAI pattern instruction.

Instruction No. 7, based on MAI–CR 3d 329.50.1, provided in relevant part:

As to Count II, if you find and believe from the evidence beyond a reasonable doubt:

First, that on or about August 6, 2000, in the County of Warren, State of Missouri, the defendant represented to Cpl. Phil Hoffman that he was a police officer, and

Second, that such representation was false, and

Third, that defendant did so with the purpose to induce Cpl. Phil Hoffman to rely upon his pretended official acts, and

Fourth, that defendant caused Cpl. Phil Hoffman to act in reliance upon his pretended official authority, then you will find the defendant guilty under Count II of false impersonation.

Paragraph Fourth of MAI–CR 3d 329.50.1 provides:

Fourth, that defendant ( [Describe act performed.] in that pretended capacity) (caused ( [name of person who acted upon representation] to [Describe act.] in reliance upon his pretended official authority)),

During the instruction conference, the following exchange occurred between the trial court and defense counsel:

The Court: I ... intend to give ... Instructions No. 1, 2, 3, 4, 5, 7, 10, 12, 13 and 14, all of which were tendered by the State. [Defense counsel], do you have any objections to any of those instructions?

[Defense Counsel]: Judge, I have objection to instruction No. 5 and have sub-

mitted I believe what has been rejected as Instruction No. A.

The Court: Yeah. I'll get to that in a minute.

[Defense Counsel]: That would be the only objection.

Defendant did not object to Instruction No. 7 during the instruction conference. Further, Defendant did not raise the issue in his Motion for New Trial. Rule 29.11(d)[3] provides in relevant part that in jury-tried cases, allegations of error must be included in a motion for new trial to be preserved for appellate review. Thus, Defendant failed to preserve for appeal the giving of Instruction No. 7 as error.

Rule 29.12 allows us to review for plain error affecting substantial rights when we find that manifest injustice or miscarriage of justice has resulted. Instructional error seldom rises to the level of plain error. *State v. Wright,* 30 S.W.3d 906, 912 (Mo.App. E.D.2000). A defendant must go beyond a demonstration of mere prejudice and establish that the trial court has so misdirected or failed to instruct the jury that it is apparent to us that the instructional error affected the jury's verdict. *Id.*

Although Paragraph Fourth of Instruction No. 7 did not describe the act of Hoffman taken in reliance upon Defendant's pretended official authority, the paragraph tracked the language of Section 575.120.1 requiring the jury to find that Hoffman acted in reliance upon Defendant's pretended official authority for a conviction. The instruction gave the jury a clear opportunity to consider that element of the charge. Therefore, Paragraph Fourth did not misdirect the jury such that it is apparent to us that the instructional error affected the jury's verdict. Additionally, as discussed under Defen-

dant's point three on appeal, sufficient evidence existed from which a reasonable juror might have found that Hoffman acted in reliance upon Defendant's pretended official authority. Accordingly, we find no plain error in the giving of Instruction No. 7 by the trial court. Defendant's point four on appeal is denied.

### Conclusion

The judgment of conviction and sentence of the trial court is affirmed as to the impersonation of a law enforcement officer conviction and reversed as to the unlawful use of a weapon conviction.

LAWRENCE G. CRAHAN, J., and LAWRENCE E. MOONEY, J., concur.

---

3. All rule references are to Mo. R.Crim. P.2002, unless otherwise indicated.