STATE of Missouri, Respondent,

v.

Richard B. HAGAN, Appellant.

No. WD 60840.

Missouri Court of Appeals,
Western District.

Aug. 26, 2003.

Emmett D. Queener, Assistant Public Defender, Columbia, MO, for Appellant.

Jeremiah W. (Jay) Nixon, Attorney General, Evan J. Buchheim, Assistant Attorney General, Jefferson City, MO, Philip M. Koppe, Assistant Attorney General, Kansas City, MO, for Respondent.

Before HOWARD, P.J., and ULRICH and HARDWICK, JJ.

VICTOR C. HOWARD, Presiding Judge.

Richard B. Hagan (Appellant) appeals from the judgment entered upon his conviction of promoting child pornography following a jury trial in the Circuit Court of Pettis County, Missouri. He maintains that the trial court erred in overruling his motion to suppress videotape evidence and in thereafter admitting the evidence, be-

cause the seizure of the videotape from his home was outside the scope of the search authorized by the search warrant and was not permitted by any exception to the warrant requirement. He further maintains that the trial court plainly erred in allowing certain closing argument by the prosecution and in giving Instruction No. 5 to the jury without specifically requiring a finding that he knew that a participant in the videotape was under eighteen years of age.

For the following reasons, we affirm the trial court's judgment.

## Background

On December 6, 1999, David Keller, a Detective Sergeant with the Pettis County Sheriff's Department, interviewed and obtained a voluntary statement from sixteen-year-old Rachel S. concerning her allegations that she had been involved in "activities involving videotapes and sex" at Appellant's home. Detective Keller subsequently investigated the activities allegedly occurring at Appellant's home and provided the results of his investigation to the prosecutor's office. Armed with this information, including an affidavit from Detective Keller and Rachel S., a Pettis County assistant prosecutor applied for a search warrant of Appellant's home on December 10, 1999.

That same day, a circuit court judge issued a search warrant, finding probable cause to search Appellant's home for certain items "believed to be . . . evidence of a crime," which items specifically included:

. . . still and video images of [Rachel S.] . . . still and video images of a 30 to 33 year old white male with a receding hairline and a goatee engaging in various sex acts with [Rachel S.], [and] still and video images of an approximately 25 year old white male with a shaved head and a large tattoo on his left bicep of a diamond with an explosion behind it engaging in various sex acts with [Rachel S.] . . .

On the evening of December 17, 1999, Detective Keller served the search warrant upon Appellant at his home and executed the search. During the search, the police seized 161 videotapes from the office area of Appellant's home. The officers later reviewed each of the videotapes, two of which were itemized on the inventory of property seized under the warrant as portraying Rachel S. having sex with three men, two of which portrayed another woman performing sex acts in front of a two-year-old child, and 157 of which were generally described as "[s]ome home made porn some [p]rofessional with short home made passages." Among these videotapes was one depicting Jacqueline B. ("Jackie B."), a minor under the age of eighteen, engaged in sexual acts with various other individuals.

On May 22, 2001, a Pettis County grand jury issued an indictment charging Appellant with the Class C felony of promoting child pornography in the second degree in violation of section 573.035, a charge relating to the videotape of Jackie B. seized during the search of Appellant's home. Prior to trial, Appellant moved to suppress this videotape.

On October 16, 2001, the trial court conducted a pretrial hearing on Appellant's motion to suppress, at which Detective Keller testified concerning the seizure of the videotapes. The trial court overruled the motion, and the case proceeded to trial. The State's evidence consisted of testimony from Detective Keller, Jackie B., and Melissa B., who participated in and was filmed with Jackie B. in some of the sexual activities depicted on the videotape. In addition, the State's exhibits admitted by the court included the videotape, which was viewed by the jury.

After the State rested, Appellant moved for a judgment of acquittal. The court denied the motion, and Appellant announced that he was resting. Both sides expressly declined to make any record regarding the instructions. In the State's closing argument it argued, without objection, that it was not required to prove that Appellant knew Jackie B. was a minor; rather, it only had to prove that he knew the "nature and character of the material he was creating." Appellant responded in closing argument that the State had failed to prove the elements of the offense beyond a reasonable doubt and stressed that the State was wrong in its characterization of what it had to prove. He urged the jury:

> more fundamentally and more critical in the case is the fact that he must know at the time the content and character of the material. And an important and crucial part of that knowledge of content and character is the age of participants. And there's no evidence, other than what these two girls told you, that he knew how old Jackie [B.] was.

The jury returned a guilty verdict. This appeal follows.

## Point I

In his initial point, Appellant alleges that the trial court erred in overruling his motion to suppress and admitting into evidence State's Exhibit No. 1, the videotape. Specifically, he claims that the seizure of the videotape and the search of its content was outside the scope of the search warrant, thereby violating his due process rights and his right to be free from unreasonable search and seizure as guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 15 of the Missouri Constitution. Appellant calls the search a classic "fishing expedition" that illegally netted Exhibit No. 1, which was not specifically described in the warrant. Thus, he contends that the search exceeded the scope of the authority granted by the judge, thereby requiring the exclusion of the videotape from evidence.

## Standard of Review

Section 542.296.6, which governs motions to suppress, provides that "[t]he burden of going forward with the evidence and the risk of nonpersuasion shall be upon the state to show by a preponderance of the evidence that the motion to suppress should be overruled."

 If the trial court's overruling of Appellant's motion to suppress the videotape is supported by substantial evidence, this court will affirm. *State v. Sullivan*, 49 S.W.3d 800, 805 (Mo.App. W.D.2001). Thus, the court's decision to deny the motion warrants reversal only if it is clearly erroneous; thus, this court will reverse the decision only if we are left with a definite and firm belief a mistake has been made. *Id.* On review, we consider the evidence from both the suppression hearing and the trial, and any reasonable inferences arising therefrom, in a light most favorable to the trial court's ruling and disregard contrary evidence. *Id.* at 806. Although this court defers to the trial court on issues concerning the weight to be afforded the evidence and witness credibility, whether Appellant's Fourth Amendment rights were violated is a question of law, which we review *de novo*. *Id.*

## Discussion

 The United States Constitution requires that a search warrant describe with particularity the items to be seized and forbids generalized searches. Specifically, the Fourth Amendment provides that "no Warrants shall issue, but upon probable cause, supported by Oath or af-

firmation, and *particularly describing* the place to be searched, and the persons or *things to be seized."* (Emphasis added.) *Accord* Mo. Const. art. I, § 15; section 542.276. As explained by the Supreme Court:

> "The manifest purpose of this particularity requirement was to prevent general searches. By limiting the authorization to search to the specific areas and things for which there is probable cause to search, the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit."

*Horton v. California,* 496 U.S. 128, 139 n. 10, 110 S.Ct. 2301, 2310 n. 10, 110 L.Ed.2d 112 (1990) (quoting *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 1016, 94 L.Ed.2d 72 (1987)). "The scope of a search warrant is limited by the terms of its authorization." *State v. Varvil,* 686 S.W.2d 507, 509 (Mo.App. E.D.1985). Seizure of items beyond the authorization of a valid warrant is unconstitutional and the items illegally seized will be excluded from evidence. *Mapp v. Ohio,* 367 U.S. 643, 649, 81 S.Ct. 1684, 1688, 6 L.Ed.2d 1081 (1961) (holding that the "exclusionary rule" set forth in *Weeks v. United States,* 232 U.S. 383, 34 S.Ct. 341, 58 L.Ed. 652 (1914), i.e., that the Fourth Amendment bars the use of evidence secured through an illegal search and seizure in a federal prosecution, applies to state prosecutions, too).

In this case the officers did not embark upon their search of Appellant's home looking for items relating to Jackie B.; indeed, no such items were mentioned in the search warrant. They were looking for still and video images involving Rachel S., and, in the process, they located 161 videotapes of a pornographic nature. According to the inventory of property seized, two of the videotapes involved Rachel S. involved in sexual relations with three men. The inventory also lists another 157 videotapes depicting "[s]ome home made porn some [p]rofessional porn with short home made passages" and two videotapes involving another girl "performing sex act infront [sic] of 2 year old child."[1] Appellant contends that once the deputies determined they had located two videotapes involving Rachel S., they had no authority to seize the remaining videotapes, and, by doing so, they went beyond the scope of the warrant.

Appellant cites two cases he believes involve similar circumstances, one from Washington and one from Maryland, where the appellate courts found that certain videotapes were improperly seized because they were outside the scope of the search warrant:

In *State v. Johnson,* 104 Wash.App. 489, 17 P.3d 3, 4–5 (2001) two young sisters reported that the defendant had sexually abused them at his apartment using a certain vibrating massager. The police recovered from the defendant's apartment the vibrating massager and a variety of other items, including two videotapes depicting the defendant fondling a different young child. *Id.* at 6. The videotapes led to a subsequent charge against the defendant for unlawfully possessing pictures of a minor engaged in sexually explicit conduct. *Id.* Prior to trial, the defendant moved to suppress the two videotapes, ar-

---

1. It is not clear from the record which, if any, of the videotapes were viewed during the search or somehow marked on the outside to give an indication of their contents. Accordingly, we are unable to determine how the deputies arrived at the descriptions of the videotapes for the inventory of the property they seized, which was purportedly filled out on the same evening as the search.

guing, in part, that the affidavit for the warrant did not show probable cause to seize or view the videotapes. *Id.* The trial court denied his motion but agreed that the warrant lacked probable cause to seize or view the videotapes. *Id.* at 7.

On review, the Washington appellate court noted that "the affidavit for the search warrant contained probable cause to believe that [the defendant] had committed child rape or child molestation; that a vibrating massager was evidence of the crimes; and that the massager would probably be found in [the defendant's] home." *Id.* at 8. But, the court found that probable cause was lacking as to the other items sought in the warrant because the broad language of the affidavit contained only generalized statements about the common habits of child abusers and set forth no facts from which to infer the likelihood that videotapes were evidence of the suspected crimes and would probably be found at the defendant's apartment. *Id.* Thus, the warrant "did not authorize the police to search for, seize, or view the two videotapes." *Id.* at 9.

In contrast, as discussed below, we find that the affidavit in support of the search warrant in our case provided the probability that all of the videotapes seized were evidence of the criminal activity described in the warrant. Thus, we find *Johnson* inapplicable.

In *Ross v. State,* 59 Md.App. 251, 475 A.2d 481, 483–84 (1984), the other case relied upon by Appellant, the subject search warrant authorized the search for and seizure of an " 'obscene, pornographic and erotic magazine or publication,' " which the application for the warrant indicated the thirteen-year-old male victim had reported the defendant utilized in the molestation of the boy. The warrant made no mention of videotapes. The Maryland appellate court found that the police's

viewing and seizure of unrelated erotic videotapes located during the search was beyond the scope of the warrant and was an illegal invasion of the defendant's privacy, because the police had no reason to believe that the videotapes were associated with the crime, i.e., that the videotapes had been "exhibited as obscene material to arouse a young boy in furtherance of prohibited sexual conduct." *Id.* at 485–86. As explained below, the situation now before this court is different.

Appellant seems to argue that because Rachel S.'s affidavit only described two sexual encounters, it follows there were only two videotapes of the incidents. However, none of the documentation leading up to the search of Appellant's home, including the warrant itself, ever indicated how many videotapes of Rachel S. Appellant had allegedly made or how many copies of the videotapes were subsequently produced. Although the deputies found, at some point, two videotapes depicting Rachel S. involved in sexual relations, they had no way of knowing how many of the other 159 videotapes contained similar images without viewing them. The record reflects that some of the videotapes seized had scenes spliced throughout the tapes, and some contained innocuous, non-sexual scenes. Only by seizing all the videotapes and reviewing them one by one could the videotapes' contents be determined.

This situation is more akin to that presented in *United States v. Horn,* 187 F.3d 781, 785 (8th Cir.1999), *cert. denied,* 529 U.S. 1029, 120 S.Ct. 1442, 146 L.Ed.2d 330 (2000). Horn began writing letters to an undercover police detective who had placed an advertisement as a " 'very discreet' " collector with " 'youthful fantasies.' " Horn inquired about trading pornographic videotapes, including child pornography, with the detective and told of his communication about acquiring

child pornography from a "woman in Texas" with three " 'very curious' " kids. The government eventually secured a search warrant, which permitted them to search Horn's apartment for " '[a]ny and all envelopes, letters, records, documents, correspondence, videotapes, published materials, and other objects relating to contact with an unidentified woman in Texas [with three children of therein-specified ages].' " *Id.* The search resulted in the seizure of more than 300 videotapes from the defendant's apartment—eight of which, although unrelated to the "woman in Texas," contained sexually explicit scenes involving minors and were used in Horn's prosecution for possession of child pornography under 18 U.S.C. § 2252(a)(4)(B). *Id.* at 788.

The court rejected Horn's argument that the seizure of hundreds of videotapes went beyond the scope of the warrant, explaining that the officers came armed with "probable cause to search for videos relating to the correspondence with the woman in Texas." *Id.* Because "[t]he officers could not immediately identify which videos were most likely to fit the description of the items that they were authorized to seize ... [and] they could not practically view more than 300 videos at the search site," the court held that the officers' seizure of Horn's entire video collection for examination elsewhere did not exceed the scope of the search warrant. *Id.*

■ Likewise, in our case, there was a fair and reasonable probability that more than two of the videotapes found in Appellant's home would involve evidence of a crime involving Rachel S. Accordingly, the Pettis County deputies had probable cause when they seized all of the videotapes from Appellant's home; because there was no way to determine which videotapes fit the description provided in the

warrant, the deputies were justified in removing the items to another location for review. The subsequent discovery that none of the other 159 videotapes involved Rachel S. "does not somehow destroy the probable cause that existed when the videotapes were first seized." *United States v. Musgrave,* 726 F.Supp. 1027, 1035 (W.D.N.C.1989).

Fourth Amendment rights are affected by searches and seizures in different respects: "A search compromises the individual interest in privacy; a seizure deprives the individual of dominion over his or her person or property." *Horton,* 496 U.S. at 132, 110 S.Ct. 2301 (citing *United States v. Jacobsen,* 466 U.S. 109, 113, 104 S.Ct. 1652, 80 L.Ed.2d 85 (1984)). We find no violation of Appellant's rights in either respect. The deputies lawfully exercised dominion over his property, and once the videotapes "were seized for further review, [Appellant's] privacy interest in the videotapes was eviscerated." *Musgrave,* 726 F.Supp. at 1035. When it became apparent that one of the videotapes contained evidence of a crime involving another minor, Jackie B., it could be seized and used in that prosecution.

Accordingly, the trial court properly overruled Appellant's motion to suppress. Point I is denied.

**Points II and III**

Appellant's second and third points, which challenge portions of the prosecutor's closing statement and Instruction No. 5 are related, so we address both points together below.

First, we consider Appellant's challenge to Instruction No. 5. The particular language complained of by Appellant required the jury to find beyond a reasonable doubt that he "knew of the content and character of the material." Appellant asserts, for

the first time on appeal, that this provision in Instruction No. 5, i.e., that he "knew the content and character of the material" (the videotapes), required as an element of the offense a finding that he knew the participant was under the age of eighteen. More specifically, he believes the court erred in not *sua sponte* fashioning Instruction No. 5 to specifically require a finding that he knew Jackie B. was under the age of eighteen and in allowing the prosecutor, during closing argument, to assert that knowledge of Jackie B.'s age was not a necessary element of the offense.

Appellant concedes he did not object to Instruction No. 5 or to the prosecutor's closing argument at trial, nor did he include these claims in his motion for new trial, so he failed to preserve the issues for review. *State v. Brown*, 97 S.W.3d 97, 100 (Mo.App. W.D.2002). Even if the error is not correctly preserved, we are allowed to review for plain error affecting substantial rights when we find that manifest injustice or miscarriage of justice has resulted. *Id.* (citing Rule 30.20).

Our courts have interpreted review for plain error as a two-step process. *Brown*, 97 S.W.3d at 100. "Step one involves examining whether the allegation of error facially establishes substantial grounds for believing that manifest injustice or miscarriage of justice has resulted. In effect, an appellate court must determine whether, on the face of the claim, 'plain error' has, in fact, occurred." *Id.* (Citations and internal quotation marks omitted.) Absent that determination, this court should decline to exercise its discretion to review a claim for plain error. *State v. Schneider*, 97 S.W.3d 494, 496 (Mo.App. W.D.2002). "Once plain error is found, step two of the process authorizes the appellate court[, in its discretion,] to determine whether the claimed error resulted in

manifest injustice or a miscarriage of justice." *Brown*, 97 S.W.3d at 100.

"The plain error rule should be used sparingly and does not justify a review of every [alleged] trial error that has not been properly preserved for appellate review." *Id.* at 100–01. Instructional error such as that alleged by Appellant "seldom rises to the level of plain error." *State v. O'Toole*, 83 S.W.3d 622, 630 (Mo. App. E.D.2002). For us to find such plain error, Appellant must demonstrate more than "mere prejudice"; he must "establish that the trial court has so misdirected or failed to instruct the jury that it is apparent to us that the instructional error affected the jury's verdict." *Id.*

Likewise, a trial court's failure to *sua sponte* address improper statements made in closing argument rarely constitutes plain error requiring reversal, because without an objection or request for relief, the trial court's options are narrowed to uninvited interference with summation and a corresponding increase of error by such intervention. *State v. Golatt*, 81 S.W.3d 640, 648 (Mo.App. W.D. 2002) (citations and internal quotation marks omitted). In fact, because trial strategy looms as an important consideration in any trial, claims of plain error concerning matters raised in closing argument are generally denied without explication. *Id.* Therefore, unless Appellant can demonstrate that the State's allegedly improper closing argument had a decisive effect on the jury, we will affirm. *Id.*

Keeping all of the above in mind, we find that Appellant's claims of instructional and closing argument error do not facially establish substantial grounds to believe a miscarriage of justice has occurred.

First, it is not apparent that the trial court made a mistake, let alone one which

decisively affected the verdict, when it did not *sua sponte* add language to Instruction No. 5 to clarify the knowledge element of the offense—language not suggested by Appellant until appeal. There is authority from other states with similar statutes that the language "knowing the content and character" does not necessarily create an element that the defendant know the person in the material is under eighteen years of age, but instead refers to defendant's knowledge of the sexual nature of the material being produced.[2]

In fact, even if the jury had been instructed that such knowledge was a necessary element, it heard evidence that Appellant was aware of Jackie B.'s age. For example, there was testimony quoting Appellant as saying he would find Jackie B. a dancing job when she turned eighteen. It is quite possible the jury accepted Appellant's argument that a defendant must know the participant's age, but it believed the evidence demonstrating that he had that knowledge.

Second, Appellant was clearly allowed during trial to put forth the defense that he was not aware Jackie B. was under the age of eighteen, so he could not be convicted. He pursued this strategy during his cross-examination of the witnesses and in his argument to the jury. The trial court did not plainly err by not stepping in on its own to prevent the State from countering this defense strategy during closing argument.

Finding no "evident, obvious and clear" error by the trial court so as to amount to plain error relating to either the allegedly improper instruction or closing argument, we deny Appellant's Points II and III.

## Conclusion

The trial court did not err in overruling Appellant's motion to suppress the videotape evidence and in thereafter admitting the videotape into evidence. Nor did the court plainly err in failing to *sua sponte* fashion Instruction No. 5 to specifically require a finding that Appellant knew Jackie B. was under the age of eighteen or in failing *sua sponte* intervene in the State's closing argument and thereafter allow it to argue that knowledge of Jackie B.'s age was not an element of the charged crime.

**2.** *See, e.g., Outmezguine v. State,* 335 Md. 20, 641 A.2d 870, 880 (1994) (holding, "[t]he scienter requirement [for imposing criminal responsibility for violations of child pornography laws] refers to knowledge of the 'nature and character' of the materials produced," and Maryland Code (1957, 1992 Repl.Vol.) Art. 27, section 419A(c), under which the defendant was convicted of child pornography for photographing a minor engaging in sexual conduct, "satisfies this requirement, because a defendant photographer must have knowledge that he or she is taking pictures of sexual conduct as defined in § 416"); *United States v. Reedy,* 632 F.Supp. 1415, 1422–23 (W.D.Okla.1986), *aff'd,* 845 F.2d 239 (10th Cir.1988), *cert. denied,* 489 U.S. 1055, 109 S.Ct. 1318, 103 L.Ed.2d 587 (1989) (rejecting claims similar to Appellant's herein after finding (1) there was no constitutional requirement that defendant's knowledge of a victim's age was a necessary element of a prosecution for sexual exploitation of children in violation of 18 U.S.C.A. § 2251(a) (West Supp.1984–1985), and (2) the legislature had expressly stated "it [was] not a necessary element of a prosecution [under that statute] that the defendant knew the actual age of the child"); and *People v. Gilmour,* 177 Misc.2d 250, 678 N.Y.S.2d 436, 439 (N.Y.Sup.Ct.1998) (declaring New York's child pornography statute constitutional even though it requires only that the defendant was generally aware of the nature and character of the pornography he possessed); *State v. Rosul,* 95 Wash.App. 175, 974 P.2d 916, 918 (1999) (holding, "Washington's statutory scheme prohibiting possession of child pornography does not require as an element of the crime that a defendant know the age of the persons depicted in the material he is charged with possessing").

Accordingly, we affirm the trial court's judgment.

ULRICH and HARDWICK, JJ., concur.